PER CURIAM.
Appellant was terminated from her employment as a sales associate with a shade and blind company. She applied for unemployment benefits and was denied based on her employer’s report that she was terminated for “falsification of work related documents.” She appealed the decision and a hearing was held.
At the hearing, appellant’s former supervisor and CEO of the company, Alex Fryburg (Fryburg), testified about an argument that he had with appellant over a work order she had prepared incorrectly. When he attempted to discuss the error with her, she “blew up” and began yelling. According to Fryburg, he asked appellant to calm down and she refused so he told her to either calm down or quit. When *418 she refused to quit, he fired her for insubordination.
Fryburg agreed that appellant was fired because she lost her temper and not because she falsified documents. He submitted documents showing that appellant had filled out certain commission forms incorrectly, but he stated that he did not find the forms until he was looking through a file after she was terminated. Even though appellant could not have been fired because of the commission forms because Fryburg did not know about the forms at the time of her termination, he admitted having written on the unemployment benefits claim form that she had been terminated for falsifying records.
Appellant testified, acknowledging that she became angry when her employer wanted to discuss the incorrect sales order again because they had previously discussed the order several times. According to appellant, after the two exchanged angry words, Fryburg asked her if they would be able to have an intelligent conversation and appellant said, “no.” Appellant explained that the two were exchanging insults and “it got totally out of control, because it was — it was hot dog on both sides.” At that point, according to appellant, Fryburg asked for appellant’s keys. When she asked whether he was firing her, he replied, “no, I just want you out of here.” When appellant refused to turn over the keys and did not leave, Fryburg said, “okay, you’re fired.”
The appeals referee issued a decision finding that appellant was disqualified from receiving benefits because she was discharged for misconduct connected with work, specifically, for failure to obey the owner’s order that she hand over the keys. The referee concluded that the owner’s request for the keys was a reasonable and valid request to protect his business because the claimant was “totally out of control” and her failure to comply constituted misconduct connected with work.[1]
On appeal, the Unemployment Appeals Commission (UAC) found that the referee’s findings were supported by competent, substantial evidence, and affirmed the decision. Upon review, we reverse the decision denying appellant benefits because she was denied due process and because the referee’s findings are not supported by the evidence.
First, we note that the referee’s findings are not supported by the evidence. Although it is clear that some sort of verbal altercation took place between appellant and her employer, there was no evidence that appellant “got totally out of control.” Contrary to the referee’s finding, appellant’s unrebutted testimony was that she and her employer were arguing and “it got totally out of control.” Considering the entirety of appellant’s testimony, it is obvious that appellant was referring to the situation or the conversation and not herself.
Next, we address appellant’s claim that she was denied due process because the appeals referee allowed her employer to testify that she was terminated because she lost her temper and not because she falsified documents, the original reason listed on the benefits claim form. The *419 UAC asserts that there was no procedural error because, in any event, appellant had notice of the actual legal issue to be addressed at the hearing, that is, whether she was discharged for misconduct connected with work.
“Due process requires that the claimant receive proper notice of the issues to be heard or expressly waive such notice; otherwise, the claimant is deprived of a fair hearing.” Smith v. Unemployment Appeals Comm’n, 751 So.2d 639 (Fla. 1st DCA 1999)(where claimant was noticed that he was denied benefits because the employer had made a bona fide offer of other work before phasing out his job; however, at the hearing, employer was allowed to testify that benefits should be denied because claimant was discharged for misconduct connected with work, court held that claimant was denied due process and appeals referee was not authorized to consider the additional claim); see also Penton v. Royal Crown Bottling Co., 646 So.2d 267 (Fla. 1st DCA 1994)(claimant who was discharged for alleged failure to follow supervisor’s directions to service certain customers was entitled to new evi-dentiary hearing where employer introduced into evidence complaints filed by various customers and claimant had no notice of such evidence). The UAC argues that appellant had notice, generally, that she was discharged for misconduct connected with work and it is inconsequential that her employer was allowed to change his mind during the hearing as to the exact conduct which led to appellant’s termination. We reject that argument.
Appellant attended the hearing with the understanding that she would have to defend the allegation that she falsified documents and not the allegation that she argued with her employer and was insubordinate on the day she was fired. Appellant’s request for benefits was initially denied because the employer indicated she had falsified documents. The denial of benefits on that ground was what appellant appealed. Based on Fryburg’s admission at the hearing that appellant was not terminated for falsifying documents, we reverse the order denying her claim and remand with directions that she be awarded benefits.
REVERSED AND REMANDED.
STEVENSON', SHAHOOD and MAY, JJ., concur.

. Specifically, the referee found, in pertinent part:
The claimant became, in her own words, “very upset” and "totally out of control” because of the continual criticism over the one order and her general performance....
[[Image here]]
... The unrebutted testimony of the claimant is that during the argument on October 10, 2002 she was "totally out of control” and refused to hand over the keys when requested by the owner, even after being assured she was not being discharged.